SERPE & ASSOCIATES, P.C.                                           Hearing Date: April 26, 2011
450 Seventh Avenue                                                     Time: 3:00 P.M.
Suite 450
New York, New York 10123
Sean C. Serpe, Esq. (SS 6810)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re:

         ROY AND MAUREEN MENTON,                   Case No. 10-31635-mcr

                     Debtors.                                     Chapter 13
-------------------------------------------------------------X

**AFFIDAVIT IN RESPONSE TO ORDER DIRECTING ATTORNEY SEAN SERPE TO SHOW CAUSE WHY SANCTIONS OUGHT NOT BE IMPOSED, PRIOR FEES OF $4,000.000 BE DISGORGED, AND REFERRAL BE MADE TO THE DISTRICT COURT FOR CONSIDERATION OF HIS BEING BARRED FROM PRACTICE IN THE <u>NORTHERN DISTRICT OF NEW YORK</u>**

         1.      I am the attorney for the Debtors Roy and Maureen Menton (hereinafter referred to as the "Debtors" or the "Mentons").

         2.      I make this affidavit in response to the order directing Attorney Sean Serpe to Show Cause why Sanctions Ought Not be Imposed, Prior Fees of $4,000.00 Be Disgorged, And Referral be made to the District Court For Consideration of his Being Barred From Practice in the Northern District of New York.

         3.      Roy and Maureen Menton first consulted with me on February 13, 2009 to discuss their financial difficulties. (I attach a copy of their client information sheet as Exhibit A.) During that consultation, the Mentons advised me of certain financial difficulties they were experiencing arising out of their purchase of the Millens Bay Inn. Subsequent to that meeting, the Mentons contacted me in order to retain my services.

         4.      On March 24, 2009, the Mentons and I (as attorney) signed a retainer agreement for debt settlement services. The fee for that representation was flat at $2,000. I attach a

true copy of the retainer agreement as Exhibit B.

5. The Mentons paid the retainer to my firm in five monthly installments of $400. Copies of these payments are attached hereto as Exhibit C.

6. During the period of April 2009 to November 2009, my firm performed debt negotiation services, defense of foreclosure for Millens Bay Inn, and loan modification services for Key Bank.

7. Attached as Appendix A hereto is a copy of my time sheets for this matter, which includes this time period.

8. I attach as Exhibit D copies of correspondence from that period, as well as copies of an answer filed by Serpe & Associates, P.C. in the foreclosure case.

**The First Chapter 13 Case**

9. In November 2009, when the Mentons had fallen behind five months on their home mortgage, Ms. Menton was being garnished for a Sysco lien, and their creditors had placed most of Mentons' accounts into collection, the Mentons decided to file for chapter 13 bankruptcy.

10. Neither my firm nor I took a legal fee for that filing. We did charge a fee for the credit counseling, the credit report and the bankruptcy filing fee, which was paid subsequent to the filing.

11. In connection with that case, I appeared at the meeting of creditors scheduled on February 8, 2010, in Watertown, New York.

12. An appearance attorney appeared for my office on March 8, 2010, in a continued meeting in that case.

13. I appeared telephonically on February 23, 2010 regarding the motion of Citizen's Bank to modify the automatic stay.

14. I also filed a response to the motion (attached hereto as Exhibit E), and teleconferenced the matter with counsel to bank.

15. By conditional order dated February 19, 2010, I was informed that the Debtors case was subject to automatic dismissal for failure to notice the confirmation hearing.

16. My office drafted and served such notice on February 18, 2010 (a copy of which is attached hereto as Exhibit F), but failed to file it on-line. In my supervision of my paralegal working on that case, I took all necessary steps to ensure service and noticing, and filing of the certificate of service, but overlooked the filing of the actual certificate on the docket. I did not realize that until the Trustee pointed that out in their objection to my motion to vacate the automatic dismissal of the prior chapter 13 case.

17. As a result, the Mentons' first bankruptcy case was dismissed March 12, 2010.

18. Subsequent to the dismissal, as the Mentons were now nearly eight months behind on their home loan, I made all efforts to get a modification of the home loan for my clients.

19. I met with the Mentons in New York to discuss the dismissal, including preparation of filing of the motion to vacate the dismissal, as well as the foreclosure issues related to both Millens Bay and their home. During that period, I also advised the Mentons regarding their proposed sale of equipment from Millens Bay Inn, as well as regarding the repossession of their automobile.

**The Home Loan Modification**

20. My office contacted Key Bank on in March and April 2010, and discussed modification of the Mentons home loan.

21. On May 11, 2010, I filed the motion to vacate the dismissal.

22. On or about June 5, 2010, Mr. Menton advised me that the Citizens Bank had planned a sale of the certain equipment at the Millens Bay Inn. At that time, without the bankruptcy case filed, I feared that my clients would have their property of sold without their consent.

23. As such, on June 16, 2010, I filed a second chapter 13 case for them, which stayed the sale. I attach a copy of the notice of sale hereto as Exhibit G.

24. I did not take any fee for that case. My firm did charge a fee for credit counseling, the credit report, or the bankruptcy filing fee, which was paid after the case.

25. In September 2010, my office received reimbursement from the Mentons for the two prior case filing fees ($548), as well as the fees for credit counseling and debtor education ($200), credit reports ($100), the first payment to the chapter 13 Trustee ($690), fee for an appearance counsel ($75), and fees for my travel to Syracuse and Federal Express and mailings (which my firm discounted and rounded to $387). My firm received no further funds from the Mentons.

26. On July 12, 2010, I attended the meeting of creditors for the Mentons in Watertown, New York.

27. At that meeting, the Trustee's counsel asked for documentation regarding the equipment located at Millens Bay Inn, which was subsequently hand delivered by Mr. Menton to the Trustee's counsel at an adjourned hearing.

28. After that meeting, I was informed by Key Bank that they were going to offer my clients a modification of their home loan.

29. According to the terms of the modification, the Mentons arrearage of nearly ten months was removed, their payments were lowered to $683 per month from $2300, and their interest rate was reduced to 4% for two years. My office sent a letter to the Trustee's office

requesting permission to enter into modification discussions with Key Bank, which the Trustee approved. (I attach as Exhibit H the correspondence regarding that modification.)

30. On November 16, 2010, the Trustee filed an objection to confirmation of the chapter 13 plan, which my office responded to on January 21, 2011.

31. A confirmation hearing was held on November 23, 2010, in Syracuse, New York, which an appearance attorney from my office attended due to an actual conflict with another case I was involved in Suffolk County, New York (captioned *Bergman v. The Bank of New York*.) I attach an E-Courts print out for that case, as Exhibit I. I attach a copy of the bill from our appearance attorney for that day as Exhibit I).

32. I attended the adjourned confirmation hearing in Syracuse on January 25, 2011.

33. At the Court hearing on the Order to Show Cause against Sysco scheduled for March 1, 2011, the Court advised to file a detailed affidavit regarding my time on this case, as well as information regarding the payment from Sysco.

34. The Court set a deadline of March 15, 2011 to submit that information or to seek an adjournment.

35. I dealt with a personal health matter on the weekend of March 12, which caused me to work on substantially reduced hours on March 14 and 15. I met with my clients on March 17 and 18th to discuss the case. During those meetings, based on my advice, the clients decided based on the loan modification, the amount of monies saved in the chapter 13 process, and the likelihood of a chapter 13 plan being 100% in this case, that they would seek to dismiss the case.

36. In addition, since the time of the prior filing, and as a result of investigation by my office since the last filing, it has come to my attention that the Mentons have claims against

creditor Citizens Bank for damages in connection with the Millens Bay Inn transaction. My office has drafted since March 15 a complaint to be filed against Citizens Bank in connection therewith. I have attached a copy of the drafted complaint hereto as Exhibit J. I have agreed to represent the Mentons in the matter on a contingency basis, but have not set any actual retainer as the chapter 13 case is currently pending. I also have agreed not to charge the Mentons for any debt settlement services.

37. It was decided in consultation with the clients that after the chapter 13 case was dismissed, this lawsuit would be filed against the bank.

38. On Monday March 21, 2010, I contacted Chambers to advise that the Debtors sought to dismiss the case, and requested an adjournment of the Confirmation Hearing in order that I could submit my affidavit regarding time spent on this case as well as an explanation of the 2016 statements.

39. My office was informed that our request for adjournment was not granted and that I was to appear in Court the next day. I made travel arrangements to Syracuse for the next morning (a copy of the E-Ticket is attached hereto as Exhibit K), but I missed that flight due to leaving my file for the matter in a cab, and having to retrieve it. I took a subsequent flight, which arrived at 3:30 PM (a copy of the E-Ticket for that flight is attached as Exhibit L). I also retained an appearance counsel (Peter Orville) to appear on my behalf in Court that day. I attach as Exhibit M a copy of the receipt for our appearance attorney for that day.

40. I have tried my best to zealously advocate for my clients. I believe it is in the client's interest with their loan modification in hand, as well as with the funds that have been saved during the chapter 13 case, to settle their debts outside of the bankruptcy process which they have agreed on my advice to do on March 17, 2011.

41. I apologize to the Court for any confusion regarding my Rule 2016 Statement submissions. I did not take any legal fee for the filing of those two cases. In addition, I apologize to the Court for not complying with the March 15, 2010 deadline, however, my health issues prevented me from doing so.

42. Finally, I apologize for not making the hearing on March 23, but hope that the Court sees my good faith by my efforts to get to that hearing as well have coverage for that hearing.

Dated: New York, New York
    April 25, 2011               **SERPE & ASSOCIATES, P.C.**
                                    Attorneys for the Debtor

                        By:    /s/ Sean C. Serpe
                               Sean C. Serpe, Esq., (SS 6810)
                               450 Seventh Avenue
                               Suite 2601
                               New York, New York 10123
                               (212) 725-3600

Notary Public

/s/
Sworn to before me
this 25th day of April 2010