# Exhibit J

SUPREME COURT FOR THE STATE OF NEW YORK      Index No.:
COUNTY OF THE BRONX
------------------------------------------------------------------------X
MAUREEN MENTON AND ROY MENTON,

                               Plaintiffs,

       -against-

CITIZENS BANK OF CAPE VINCENT,

                               Defendants.
------------------------------------------------------------------------X

      Come now MAUREEN MENTON AND ROY MENTON, complaining of the Defendants, Citizens Bank of Cape Vincent (hereinafter referred to as "Citizens") and (hereinafter referred to as "_____," together with Citizens, the "Defendants") and allege as follows:

## FACTS

1. MAUREEN MENTON AND ROY MENTON (hereinafter referred to as "Plaintiffs") agreed to a $120,000 loan (hereinafter referred to as the "Mortgage") from Citizens in or around June 2006 in order to purchase a property at Millens Bay, called Millens Bay Inn (hereinafter "Millens Bay"), located at 6380 County Route 8, Cape Vincent, New York.

2. The previous owner of the property, Gloria Morehouse (hereinafter referred to as "Morehouse") previously managed a restaurant at said property.

3. Millens Bay, before operating as a restaurant, has also operated as a residence.

4. Morehouse claimed that during the time she worked as proprietor of this restaurant, she kept it open only minimally. Morehouse did not keep the kitchen open on weekdays, and if there were no patrons present, Morehouse would not stay open later

1

than 8:00 P.M. This contrasts significantly with the Plaintiffs roles as managers and proprietors of the restaurant, during which Millens Bay was open for business year-round. The Plaintiffs were open four days per week, winters otherwise every day (excepting March 2007 for renovations and one week in September 2007), averaging 10 hours per day, frequently closing between 10:00 P.M. and 2:00 A.M., regardless of having patrons or not. Moreover, Morehouse was not open for the lunch rush, which was a market the Plaintiffs came to accumulate.

5. During the time Morehouse worked as proprietor of the restaurant, she did not open the restaurant for the year before May and closed for the winter every year in October at the latest. This lack of consistent opening also contrasts strongly with that of the Plaintiffs, who were open year-round and kept consistent hours.

6. Prior to signing the Mortgage, Citizens required Morehouse's financial documentation including sales, income, and her three most-recent tax returns.

7. The financial documentation Morehouse provided showed that with the limited months per year, days per week, and hours per day, Morehouse still grossed approximately $110,000 per annum.

8. Citizens, the Plaintiffs and Plaintiff's attorney, Morehouse and Morehouse's attorney, as well as a real estate agent were present at the closing of Millens Bay in June 2006.

9. As the fall of 2006 and winter of 2006-2007 saw Millens Bay not only open for its first off-season, but also under new ownership, the Plaintiffs allowed for financial underperformance and initially only slight suspicion was aroused regarding fraudulence on the part of Citizens and/or Morehouse.

10. 2007 was the first full calendar year during which the Plaintiffs worked as sole operators of Millens Bay, and despite the Plaintiffs greatly extended opening hours, matching house recipes and naming rights as well as being open year-round, the Plaintiffs were only able to match Morehouse's claimed annual $110,000, and only by the end of the year.

11. The Plaintiffs were granted another loan by Citizens in 2007 totaling $25,000. Because the Plaintiffs were already wary of diminishing returns on the Millens Bay investment, the Plaintiffs elected to not withdraw all the money at once. Roy Menton first withdrew $10,000 and then $7,000, both of which went primarily toward expenses involved in renovations and replacing worn out equipment for the restaurant.

12. On or around May 27, 2010, the Plaintiffs received a regular monthly statement from Citizens (attached to this document as Exhibit 1), dated May 24, 2010 at which time the amount owed was

13. During or around August 2008, Maureen Menton was tending to one of the regular bar customers of Millens Bay, a member of Citizens' Board of Directors, Neil Mason (hereinafter referred to as "Mason"). Mason had consumed enough alcohol to be noticeably uninhibited with Maureen Menton during which Maureen complained that despite what Citizens had expected based on Morehouse's reported earnings, and despite Citizens' assumption that the Plaintiffs would expect similar profits; the Plaintiffs had not earned anything comparable to Morehouse's income. This is especially true considering the Plaintiffs heavily extended hours of operation. Maureen told Mason that the Plaintiffs suspected Morehouse's numbers, which were

3

accepted by Citizens, were, at best, not legitimate, and were likely to have been purposefully falsified.

14. Mason told Maureen that Morehouse's numbers were troubling for Citizens as well when Citizens approved the Plaintiffs mortgage. Mason continued in a semi-drunken state that at the time of the Plaintiffs mortgage, that Citizens "decided to not be troubled" by Morehouse's financial documentation. Mason herein admitted fraudulent activity by Citizens as well as Morehouse.

15. Unbeknownst to the Plaintiffs at the time, Morehouse already banked exclusively with Citizens, when Mason admitted fraud to Maureen Menton.

16. In October 2008, the Plaintiffs, in order to avoid further financial loss, decided to convert Millens Bay back into a residence. This would remove the restaurant service and the same building, operating as a two-family domicile, would replace it.

17. Having made the decision to modify the business, the Plaintiffs planned an auction for their restaurant equipment that they would no longer need.

18. Upon hearing of the auction, Citizens contacted the auctioneer to disallow the sale, which the auctioneer then explained to the Plaintiffs by telephone.

19. Because the equipment for auction was new or only little used, the Plaintiffs reasonably expected $30,000 proceeds from its sale. The Plaintiffs financial plan was to use these funds to pay off creditors and vendors, to get current with Citizens, and for renovations to convert main floor into residence.

20. The Plaintiffs dated May 24, 2010; amount due 120,082.62 instead have a statement dated three days before foreclosure stating that the Plaintiffs still owed $120,000,

4

however the property was sold at foreclosure for $154,000 as reported in the local paper.

21.

22.

23. Affidavit from Fate Waterman is not factual (from the bank to Bankruptcy Court)

24.

25. The Plaintiffs further allege that Citizens improperly and illegally acted as a real estate agent for their customer to whom the Plaintiffs sold Millens Bay. Citizens gave the Plaintiffs a copy of the loan commitment of the party who would eventually purchase the property. Citizens also provided the Plaintiffs a sale of real estate contract for $160,000 before the eventual buyer had signed the document, which is unfair to the Plaintiffs, who were also clients of Citizens at the time. After the Plaintiffs signed the sale contract, the eventual buyers then lowered their offer by $10,000.

26. Bank's lawyer sent us a letter demanding a business plan for the property to run as a restaurant.

27. Denied access to our equipment since the foreclosure

28. Took away Roy Menton's livelihood and greatly reduced Maureen Menton's chance of working as an educator/administrator in the area.

29. Took away a business decision from us. We understood that restaurants were not the way to go. We wanted to change into two family home to rent or to sell.

30. 4 Restaurants in the Town/Village of Cape Vincent have closed since we stopped running the business as a restaurant and another is now a part time business.

5

31.

   Lucas Larson
   Serpe & Associates, P.C.
   450 Seventh Avenue Suite 2601
   New York, NY 10123

   T 212.725.3600 F 646.304.1666

   This email and any attachments may be confidential or legally privileged. If you received this message in error or are not the intended recipient, you should destroy the email message and any attachments or copies, and you are prohibited from retaining, distributing, disclosing, or using any information contained herein. Please inform us of the erroneous delivery by return email. Thank you for your cooperation.

32. On Mon, Mar 21, 2011 at 12:46 PM, Sean Serpe <sean@seanserpelaw.com> wrote:

33.

   Sean C. Serpe
   Serpe & Associates, P.C.
   450 Seventh Ave. Suite 2601
   New York, NY 10123

   T 212.725.3600  F 646.304.1666

   This email and any attachments may be confidential or legally privileged. If you received this message in error or are not the intended recipient, you should destroy the email message and any attachments or copies, and you are prohibited from retaining, distributing, disclosing, or using any information contained herein. Please inform us of the erroneous delivery by return email. Thank you for your cooperation.

34. ---------- Forwarded message ----------
    From: <rmmvm@aol.com>
    Date: Mon, Mar 21, 2011 at 12:41 PM
    Subject: Missing Points
    To: sean@seanserpelaw.com

35. October 2008 Business Decision to convert building into two family home (was originally a residence before a business) We put the equipment up for auction and the bank called the auctioneer to stop the sell of equipment **Called to stop auction; auctioneer called Roy to inform Roy that the bank had disallowed the auction to proceed. The auction of the equipment would have enabled the sale. Reasonably $30,000 expected, to pay vendors, bank and renovations to convert main floor into residence. Commitment letter was given the marina Raymond** R. Benjamin and **Cynthia** K. **Niles.**

36.

6

37. **the**
38.
39. Foreclosure - no papers were sent to us about it to this day. We have a bill dated days before foreclosure stating that we owe $120K property was foreclosed for $154K and published in local paper. **Bill dated May 24, 2010; amount due 120,082.62. (Most of which was interest, going back to Sept 2008, 966.82 to June 8, 09 at which time it was $111369.24. 966.82. On**
40.
41.
42. Affidavit from Fate Waterman is not factual (from the bank to Bankruptcy Court) **Which**
43.
44. Bank acted as real estate agent for one of its customers. Bank gave us a copy of the loan commitment for the buyer. Bank gave us a sell of real estate contract for $160K buyer had not signed it. Buyer then lowered offer after we had signed it.
45.
46. Bank's lawyer sent us a letter demanding a business plan for the property to run as a restaurant.
47.
48. Denied access to our equipment since the foreclosure
49.
50. Took away Roy Menton's livelihood and greatly reduced Maureen Menton's chance of working as an educator/administrator in the area.
51.
52. Took away a business decision from us. We understood that restaurants were not the way to go. We wanted to change into two family home to rent or to sell.
53.
54. 4 Restaurants in the Town/Village of Cape Vincent have closed since we stopped running the business as a restaurant and another is now a part time business. **was able to enter the property in Millens Bay in/around July 2010...in village there are. 2 restos in vlg 1 at border in clayton and 1 at outskirts of town... further 4 The Carlton; Market Street Inn; Roxy's; (pron. Jrecks Subs); Broadway pizza; fishmans (maybe).**

# FIRST CAUSE OF ACTION

## (FRAUD)

55. For a First Cause of Action against all defendants, Plaintiffs restate the allegations contained in Paragraphs 1 through 20.

56. .

# SECOND CAUSE OF ACTION

## (Wrongful Denial of Loan Modification)

7

57.     .

## THIRD CAUSE OF ACTION

### (Breach of Contract)

58.     For a Third Cause of Action against all Defendants, Plaintiffs restate the allegations contained in Paragraphs 1 through 16.

59.     The Plaintiffs were led to believe that they would receive a loan modification by Defendants.

60.     In reliance on this representation, Plaintiffs engaged in a course of dealing which damaged their credit and put them in danger of losing their home.

61.     The Plaintiffs have been damaged by this action and should be compensated for the same.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

62.     For a Fourth Cause of Action against all Defendants, Plaintiffs restate the allegations contained in Paragraphs 1 through 16.

63.     The Plaintiffs were led to believe that they would receive a loan modification by Defendants.

64.     In reliance on this representation, Plaintiffs engaged in a course of dealing which damaged their credit and put them in danger of losing their home.

65.     The Plaintiffs have been damaged by this action and should be compensated for the same.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Stress)

66. For a Fifth Cause of Action against all Defendants, Plaintiffs restate the allegations contained in Paragraphs 1 through 16

## SIXTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

67. For a Sixth Cause of Action against all Defendants, Plaintiffs restate the allegations contained in Paragraphs 1 through 16.

68. The Plaintiffs were led to believe that they would receive a loan modification by Defendants.

69. In reliance on this representation, Plaintiffs engaged in a course of dealing which damaged their credit and put them in danger of losing their home.

70. The Plaintiffs have been damaged by this action and should be compensated for the same.

## **PRAYER FOR RELIEF**

1. The Plaintiffs move the court for a punitive damage judgment for One Hundred Thousand Dollars, ($5,000,000), and or any other relief set by the Court, to be paid to the Plaintiffs, by the Defendants. The Plaintiffs have been held hostage by the Defendants for over a year. The process that was supposed to last only 3 months has caused the Plaintiffs stress and anxiety.
2. The Plaintiffs move the court to order the Defendants to delete the damaging foreclosure process from the Plaintiffs' credit rating.
3. The Plaintiffs move the court for the Defendants to pay the Plaintiffs' court costs.

Dated: New York, New York
       March 18, 2010

                                                  Respectfully submitted,

                                                  SERPE & ASSOCIATES, P.C.
                                                  Attorneys for the Plaintiffs

                                                  _____

                                                  Sean C. Serpe, Esq.
                                                  450 Seventh Avenue
                                                  Suite 2601
                                                  New York, New York 10123
                                                  (212) 725-3600